Thank you, your honor. May it please the court and counsel, my name is Erica Holzer and I represent the plaintiff appellant Terry Olson. Mr. Olson is a free man today because the federal court concluded that Mr. Olson's continued incarceration was unconstitutional and issued a writ of habeas corpus ordering his immediate release. Olson's habeas petition was so compelling in fact that the Wright County Prosecuting Authority stipulated to the issuance of the writ. Because this writ plainly satisfies the favorable termination requirement of Heck v. Humphrey. Counsel, if you slow down a little bit, I'll hear a bit better. Of course, your honor. Because the writ plainly satisfies the requirement of Heck v. Humphrey, the district court's order dismissing Olson's claims should be reversed. Under the plain language and sound policy of Heck, former prisoners are allowed to pursue the federal remedy of section 1983 only if they demonstrate that their incarceration was reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus. Now there is no expungement here, is that correct? Correct, your honor. But that's not required under Heck. I understand that. You can proceed through that list of things that qualify and I think some of the fighting words get down to called into question as to whether, because this is, it seems to me in a way, an atypical grant of habeas relief. Your honor, I think any grant of habeas relief is atypical. It is certainly a rare occurrence indeed. Well, within the sphere of grants of habeas, this is rare. Within even that sphere of cases where habeas is granted. Your honor, I would agree that the circumstances of this writ perhaps are rare, but I would submit to the court that because the only remedy under 28 U.S.C. section 2254 D is the invalidation of a conviction or sentence and release from prison, a writ of habeas corpus, whether it is stipulated to or otherwise, is necessary. But the sentence wasn't invalidated, was it? Sorry, your honor? The sentence wasn't invalidated, was it? No, your honor, the sentence was not invalidated. What was invalidated was Mr. Olson's continued incarceration. So the conviction still stands? Your honor, yes, the conviction still stands as would be the case any time a writ of habeas corpus is issued. No, that's not necessarily true. It was given a new trial. Well, your honor, I would submit that in the typical... The conviction could be vacated. The conviction could be vacated. In a situation where a prisoner is released pursuant to a writ of habeas corpus, the underlying conviction is not necessarily always vacated. In this case, it's the continued service of the sentence that was called into question. Invalidated, right? What was called into question was the continued incarceration of Mr. Olson. And that is because when the Department of Corrections set his target release date, it did so pursuant to unconstitutional factors. So when a writ is issued under Section 2254D, it is necessarily a favorable termination under HECC. Otherwise, it is not a writ of habeas corpus under Section 2254 as the plain language of that statute indicates. In this case, a federal court on September 8, 2016, issued a writ of habeas corpus ordering Olson's immediate release from prison. The writ stated that the district court was, quote, fully apprised of the circumstances of the matter and stated expressly that it was issuing the writ because it concluded that it was in the interest of justice, fairness, and equity. Do you think it was really issued under the All Writs Act? Are you familiar with that statute, counsel? There's a federal statute that says federal courts have all writs. Correct, Your Honor. Needed for justice and jurisdiction, et cetera, et cetera. Yes, Your Honor. I think there's no question, given what's in the record, that this was a writ of habeas corpus under 2254. Does it matter that the writ was vacated subsequently? It does not, Your Honor. Why not? It does not matter because we were not able to find any authority supporting the proposition that it matters. And also, I would note that neither of the appellees advanced that argument, that the vacation of the order was somehow relevant to the HEC analysis. Was it the same district court issuing both orders? Yes, Your Honor. What if this defendant, in addition to his sentence, had been fined $500? And what if the writ, for some reason, vacated the $500 fine? Would that satisfy HEC? No, Your Honor, not in this case. Because what HEC requires, in order to overcome the procedural bar of HEC through the issuance of a writ of habeas corpus, the plaintiff bringing a 1983 claim needs to demonstrate that their underlying incarceration was somehow invalidated. So I think a vacation of a fine would probably not satisfy that. Okay, so if it has to show that the underlying incarceration was invalid, where has that happened here? I know it terminated the period of incarceration, but what about the writ said that the period that he had served was improper? Your Honor, I think what the court can look to is the plain language that was in the writ itself. And the writ, admittedly, is sort of bare with respect to any sort of findings. But the appellees... That's probably because it was issued by stipulation of both sides, right? That may be the case, Your Honor. But I think that the question before the court today is whether Mr. Olson has adequately alleged that he was released from prison pursuant to a writ of habeas corpus that called into question his continued incarceration. And I would submit, Your Honor, I have not been able to find any cases... Okay, I guess that's the key. Is it his continued incarceration that has to be called into question, or is it his past incarceration that has to be called into question? And is there any case law that's helpful there? Well, Your Honor, because this is such a rare circumstance, there isn't a lot of case law. In fact, there is no case law we were able to find, and in fact, appellees do not cite any either, in which a prisoner was released pursuant to a writ where, heck, barred their claims, barred their Section 1983 claims. And I want to be clear that what we're asking this court to do is apply its precedent. In Marlow, I went back and listened to oral argument in that case in preparation for today. And a question was asked of the plaintiff in that case, was a writ ever issued? And the plaintiff's attorney had to answer no. And so I would submit that I don't want to put too much emphasis on a question and oral argument, but I think that highlights how this case is, how this case, why Marlow's 1983 claims were barred by heck, and why Olson's 1983 claims should be allowed to proceed. So to be clear, Olson does not allege that the Department of Corrections unlawfully sentenced Olson. Mr. Olson alleges that the Department of Corrections set his target release date in an unconstitutional manner by relying on conduct that occurred after the alleged crime and or by applying a severity level analysis that was in effect in 2007 rather than the one that was in effect in 1979. It's undisputed that if the state had charged and prosecuted Olson in 1979, his presumptive release date would have been set at 86 months. There is no dispute that the department has broad discretion in setting target release dates, but that discretion is not without constitutional bounds. The department relied on 2007 sentencing guidelines in setting Mr. Olson's target release date at 204 months, which is 10 years longer than the presumed release date under the 1979 guidelines. There was no law or regulation in place in 1979 that authorized the department to consider the 2007 sentencing guidelines. I'd like to take just a minute to address the statute of limitations questions for the negligence claim against The plain language of heck requires that a former prisoner demonstrate that their conviction or sentence was called into question by a federal court's issuance of a writ of habeas corpus, and that was plainly satisfied in this case. How so? Because Mr. Olson was released pursuant to a writ under Section 2254. But how did that call the conviction or the sentence into question? It called his continued incarceration into question. The basis of the 1980s, I think the court should look to the allegations alleged in this complaint, which is that Mr. Olson's incarceration, at least from 2012 on, was unconstitutional. And I see that I'm into my rebuttal time, so I'll save the rest for rebuttal. That's okay. Ms. Behrens. Good morning. May it please the court and counsel, I'm Angela Behrens on behalf of the appellees affiliated with the Minnesota Department of Corrections, which includes current Commissioner of Corrections Paul Schnell and former Commissioners Tom Roy and Joan Fabian. This court should affirm, because the district court correctly held, that all of Mr. Olson's claims against the commissioners are barred by the Heck Doctrine. The core of his claims against the commissioners is, despite a valid 40-year prison sentence that was intact the entire time he was in custody, he was illegally incarcerated because he was actually constitutionally required to be released after just 86 months. The flaw with that argument, as the district court held, was that there has been no invalidation of that period of incarceration relative to the parole date. Well, part of the period was invalidated, right? No. Yeah? No. Well, he got out earlier than they thought, right? That's what the writ was about, and the state authority agreed to it, the prosecutor. The county is the prosecutor. Yeah, and they agreed to it. What's unusual about this case is the context in the writ. Mr. Olson's habeas petition involved claims against two parties, the state challenging his conviction and the Department of Corrections relative to his parole date. At the point of the stipulation, the magistrate had recommended dismissing all of his claims against the department except for the equal protection because that had not been procedurally defaulted or unexhausted. There was no determination that it had any merit, but that was the procedural posture. I don't represent the county. I can't speak to the county's reasons for that stipulation. The federal court, they're part of the state for this purpose. Continue. Correct. I can't speak to the reasons that the county, the prosecutor and authority agreed to the stipulation, but the stipulation expressly denied any fault with the sentence, and it did not acknowledge anything wrong with any past period of incarceration, and the district court adopted the stipulation. It was silent as to the Department of Corrections and the claims relative to the parole date or any incarceration relative to when the parole date was set. There was no invalidation. There was certainly a change in circumstances, but that's not sufficient. And I would also point the court to the Second Circuit decision cited by Mr. Olson, Proventude. In there, it makes the distinction, too, that typically even under a common law, a resolution that's reached by a compromise is not a favorable termination. It's not an invalidation. There might be multiple reasons for a stipulation. But again, this is really, it can't be that a plaintiff stipulating with Defendant A is somehow a binding determination on the merits against Defendant B, and that's what we have here. And heck is clear, it's not about exhaustion or some technicality. It requires a substantive review that the period of incarceration that's attributable to what's the basis of the Section 1983 claim has been actually invalidated. And in this case, allowing his Section 1983 claims to proceed and essentially get a do-over, it would append the state court judgment where the state district court and appellate court rejected his claims on parole in his post-conviction proceedings, and it would append the ultimate resolution in the federal habeas case, which was dismissal with prejudice. For dismissal with prejudice to mean something, it can't be that there's a do-over in the Section 1983 context, and that's the collision course that heck is designed to prevent. I've also raised several alternative grounds for dismissal. Unless the court has questions on those, I will rest on the briefing and ask the court to affirm. Thank you. Mr. Bradford? Mr. Bradford? Thank you, Your Honor. May it please the court, my name is Mark Bradford, representing the appellee, Dr. Janice Amatuzio. I only have a few minutes here. I think I reserved six of my things, so it's 12. I'm happy to take additional time. Thank you very much. I won't need that amount of time. I just have a few brief points. I know there's been a lot of discussion about heck this morning, and if the 25-page decision in heck means anything as it relates to my client, it's three words. The conviction matters, and there has been no overturning, expungement, calling into question of the conviction at all. Dr. Janice Amatuzio is a witness who testified at trial. She had nothing to do with the sentencing in this case, which was the only basis for the habeas order. When you say nothing to do, convictions lead to sentences. I don't think nothing to do. But what you can't do is you can't mix and match. You can't have a civil claim that is based on somebody procuring a conviction when the only relief by stipulation that you got through the habeas process is with respect to the sentence. You can't mix and match. The whole point of heck is to say you can't collaterally attack a conviction through a civil proceeding. The whole point of heck is to prevent what happened here. On page 12 of the appendix, which is the complaint at paragraph 42, the allegation against my client is that her testimony at trial was the proximate cause of the conviction, which still stands. That is a collateral attack on the conviction, which heck precludes. This is precisely what heck protects against. I will touch briefly on the statute of limitations. In the briefing, there is no argument against the statute of limitations unless the doctrine of fraudulent concealment applies. In other words, Mr. Olson does not contend that the statute of limitations hasn't run but for equitable tolling. What's important in this case is that the doctrine of fraudulent concealment and equitable tolling requires two things, an affirmative act by the party accused of the fraud and that the facts underlying the fraud are not discoverable by reasonable diligence. Let's back up for a minute to talk just for a second about what the nature of the fraud is or what the nature of the negligence is. Dr. Amatuzio is a medical examiner. She testified at Mr. Olson's trial in 2007, and when the state asked her why she changed the determination or methodology of death from undetermined to homicide, her quote, and it's on paragraph 41 of the complaint, was that it was based on the evidence. Now they take that and say, well, what that really meant was forensic evidence or forensic science. She didn't use those words. She said evidence. That is the basis of this claim that somehow she wasn't forthcoming because she didn't say what evidence. We have an adversarial process in criminal courts and in civil courts, and any lawyer who wants to challenge the foundation for changing a determination of death from undetermined to homicide should ask a simple question, what evidence? She did not affirmatively conceal anything. She's under oath, in court, sworn to tell the truth, and nobody asked the question. That is not an affirmative act of concealment where you say my opinion is based on the evidence and nobody tries to narrow it down. But more than that, they have to overcome, they have to plead that the facts are not discoverable by reasonable diligence, and what better opportunity could there be than when the witness is in the chair under oath? There is no basis for tolling the statute of limitations. There was a supplemental letter submitted to the court a couple days ago that addressed the McDonough decision that the United States Supreme Court just issued in June 2019. I'll just briefly address its applicability here. Actually, I think McDonough supports the district court's determination here because what it says is that a Section 1983 claim doesn't accrue until there has been a favorable determination on the underlying prosecution, or in our case, conviction. Here, that never occurred. Heck, bars the claim. I would just point out that from a public policy perspective, if we're going to start allowing medical examiners to be sued in a civil case by a defendant whose conviction still stands, and the propriety or the basis of the lawsuit is dependent, the person's liability is dependent on the quality of the questions that are asked to them while they're on the witness stand. Prosecutors are going to be very hard-pressed to find medical examiners who are going to be willing to testify because what you don't do in a court is you don't come in and start giving a speech. You respond to questions that are asked. Dr. Amatuzio did that openly. She did that honestly. And heck, bars the claims against her. Thank you, Your Honors. Thank you, Mr. Bradford. I would just like to respond to a couple of points that APLEI's counsel has made. The first is the most recent argument about the floodgates opening to 1983 petitioners, or plaintiffs, rather. As I noted at the outset of this argument, it is incredibly rare for a prisoner to be released pursuant to a writ of habeas corpus. I think that takes care of any sort of floodgate argument that the court might be concerned about. With respect to the Department's statements that they do not know the reasons that the Department agreed to stipulate to the issuance of the writ, as we allege in our complaint, we don't include the letter itself in the complaint because it's not necessary to do so. But we do have the letter from Wright County setting forth its reasoning. And to quote from that letter, and this is, I think, fair game since we make these allegations in our complaint, the court stated, I'm sorry, the Wright County stated that although it did not expressly admit fault, it did admit that the Department had set Mr. Olson's target release date using the incorrect parole matrix. And it said, quote, Your client has now served over 130 months for this offense. This is four years longer than he would have received under the 1979 parole matrix. The letter goes on to state that to correct this, Wright County would agree to Olson's immediate release in exchange for a release of claims against Wright County. I can't imagine a case before this court or any court in which that is not a favorable termination as that is defined by HEC. The Department says it is unsure what the change in circumstances were to set Mr. Olson's release date 10 years longer than it would have been had he been charged and convicted in 1979. I would submit that those circumstances had nothing to do with Mr. Olson's infractions while incarcerated or other constitutionally permissible reasons for extending a target release date. Those circumstances were that the Department relied on the 2007 sentencing guidelines and not the 1979 parole matrix. There was no change in circumstances. They simply got it wrong. To respond to the Department's contention that the stipulation did not invalidate the underlying incarceration, I would submit that the federal court expressly and was obligated to conclude that Mr. Olson's incarceration was unconstitutional before it could release him pursuant to Section 2254. I don't think district courts are in the habit of rubber stamping habeas petitions and letting prisoners go free. In this case, the writ itself states that the district court was aware of the circumstances of the situation and that it concluded that Mr. Olson needed to be released in the interest of justice, fairness, and equity. This writ plainly satisfies the requirements of HECC. We are not asking this court to go beyond its precedent. Every single case, NC and Marlowe and HECC and Spencer, in each of those cases, there was no writ issued, and in our case there was. So the court can apply HECC and its precedent in a straightforward manner to allow Mr. Olson his day in court with respect to his Section 1983 claims against the Eppleys. What's your response to the doctor's argument that the conviction remaining valid keeps the HECC bar in place, even if not against the county? Your Honor, I think the plain language of HECC dictates, which is that a plaintiff bringing a Section 1983 claim must establish that his conviction or incarceration was invalidated by the issuance of a writ of habeas corpus. And the writ itself does not distinguish between an invalidation of his sentence or conviction or incarceration. But the claim depends, in essence, as counsel points out, kind of the underlying premise of HECC is not being able to bring a civil case unless the criminal conviction has been invalidated against those who are responsible for the improper conviction. But here the conviction is not invalidated. Your Honor, if I may answer the question. I see my time is up. All that HECC requires, to be sure, HECC is a very high bar. All that HECC requires is that a plaintiff bringing a 1983 claim show that he was released pursuant to a writ of habeas corpus. That is all that HECC is required. And I would submit to this Court that being able to satisfy that requirement is incredibly difficult and incredibly rare. This is one of those cases in which a Section 1983 plaintiff ought to be able to proceed with his Section 1983 claims. And although the Appley's arguments may have some merit, those are arguments that ought to be made at summary judgment, not at a Rule 12 motion to dismiss. Thank you, Ms. Holzer. Thank you.